UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE RENAY GALINDO,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:22-cv-00373-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 20, 21[1], 22)** |

### I.     Introduction

Plaintiff Michelle Renay Galindo ("Plaintiff") seeks judicial review[2] of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. Because substantial evidence and applicable law support the ALJ's decision, the decision will be affirmed.

### II.    Factual and Procedural Background

On January 6, 2020, Plaintiff applied for disability insurance benefits alleging disability as of February 15, 2014. The Commissioner denied the application initially on May 13, 2020 and on reconsideration June 29, 2020. AR 79, 85. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on March 8, 2021. AR 23–50. On May 18. 2021 the ALJ issued an unfavorable decision. AR 7–22. The Appeals Council denied review on January 24, 2022 (AR 1–6) and this appeal followed.

### III.   The Disability Standard

---

[1] Docket entry 21 should be terminated as moot; it is a notice of briefing extension authorized without leave of court; the reply brief is at docket 24.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. Doc. 7, 10.

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.     The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date of February 15, 2014 through her date last insured of December 31, 2016.  AR 12.

At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease of the bilateral shoulders and left leg; hyperopia; obesity; and refractive amblyopia of the right eye.  AR 13.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 13.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with occasional climbing, occasional postural activities, no exposure to moving mechanical parts or unprotected heights, no operation of motor vehicles, and occupations requiring no more than frequent near acuity.  AR 13.

At step four the ALJ concluded that through the date last insured (December 31, 2016), Plaintiff was capable of performing her past relevant work as a medical assistant as actually and generally performed.  AR 16.  The ALJ made an alternative finding at step five that Plaintiff could

also perform jobs existing in significant numbers in the national economy: sorter, packer, and cleaner/housekeeper.  AR 16–17.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between her alleged disability onset date of February 15, 2014 and her date last insured of December 31, 2016.  AR 17.

## V. Issues Presented

Plaintiff asserts one claim of error: "The ALJ erred by failing to develop the record and obtain an assessment of Plaintiff's limitations from any source who considered all of Plaintiff's severe medical impairments, and erroneously relied on lay speculation to estimate an RFC that is unsupported by substantial evidence."  MSJ. at 6–11, Doc. 20.

### A. Failure to Develop The Record; RFC Generally

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most you can still do despite your limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ's duty to further develop the record is triggered when the evidence is ambiguous or inadequate for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

### 2. **Analysis**

#### a. **ALJs Authority to Independently Formulate RFC**

Plaintiff initially contends the RFC is unsupported by substantial evidence because the ALJ did not point to a medical opinion that supports the assessment, therefore the RFC constitutes the ALJ's layperson speculation. MSJ at 8. That assertion however is refuted by the regulations which state that the RFC need not mirror a particular opinion, it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

Plaintiff further suggests an ALJ is not qualified to review clinical findings and translate them into functional terms. *Id.* That is also refuted by controlling authority. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015), ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Plaintiff extensively cites dicta emphasizing the <u>importance</u> of a treating or examining opinion. MSJ at 7–8 (citing *Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) (collecting cases). However, there is no <u>requirement</u> that an ALJ must obtain an examining opinion in every case before rendering an RFC determination. Although ALJs do not have unbridled discretion to do so, an ALJ is almost always tasked with performing some independent review of medical evidence that was never considered by one of the agency's reviewing physicians and translating it into an RFC, which is consistent with the ALJ's role as

articulated by the Ninth Circuit in *Rounds* quoted above.

Further, the regulations provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, a determination made on a case by case basis. *See* 20 C.F.R. § 404.1519; *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time."; *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

While there are no bright lines circumscribing the ALJ's authority to independently interpret medical evidence, some courts have found that an ALJ errs in independently reviewing medical evidence when it involves: 1) review of raw medical data such as complex imaging findings or laboratory testing results, 2) worsening of underlying impairments, or 3) development of novel impairments. *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."); *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining state agency physician, an opinion which pre-dated "plaintiff's treating records regarding the progression of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.").

**b.    The Specific Records at Issue in This case**

In short, an ALJ is not required as a matter of law to obtain a functional opinion from an examining source.  As for the reason Plaintiff argues such was warranted in this case, Plaintiff emphasizes that the non-examining state agency consultants (also known as DDS [disability determination service] doctors) who rendered opinions at the initial and reconsideration levels did not consider her degenerative disc disease.

Plaintiff emphasizes the following records: **1)** a lumbago diagnosis on June 5, 2014; **2)** chronic pain on October 1, 2015  (AR 828-29); **3)** a pain management visit on March 17, 2017 for back pain and shoulder pain demonstrating painful and limited range of motion of the lumbar spine; tenderness, crepitus, and impingement sign of the shoulder; Plaintiff reported medications were helping her pain to allow functional improvement (AR 699-701); **4)** an April 10, 2017 MRI of the lumbar spine showing mild disc desiccation at L5-S1 with a small 3 mm low signal central disc protrusion and mild degenerative facet changes greater on the right (AR 877); **5)** a MRI of the cervical spine showing mild ventral flattening of the spinal cord at C6-7 due to an overlying disc protrusion with mild canal stenosis (AR 879); **6)** an April 20, 2017 follow up where the examination findings were unchanged, Dr. Parmar reviewed the imaging, administered a Toradol injection and continued Plaintiff on medication (AR 696); **7)** a May 2017 follow up at which Plaintiff was continued on pain medication including Vicodin, Motrin 800, Robaxin, Norco, ultram, Percocet, hydrocodone, hysingla, and ketorolac tromethamine injections (AR 691, 693); and **8)** continued pain management appointments throughout 2017 on roughly a monthly basis for persistent pain that was treated with medications and injections (AR 669–90).

In regard to the MRI of Plaintiff's lumbar spine, the findings showed <u>mild</u> disc desiccation, <u>small</u> disc protrusion, and <u>mild</u> degenerative facet changes.  AR 877.  In addition, the MRI of the cervical spine showed <u>mild</u> ventral flattening of the spinal cord and <u>mild</u> canal stenosis.  AR 879.

Here, the ALJ did not review "raw medical data," as the ALJ did not interpret the MRI images. That was done by the radiologist who wrote a report. There is insufficient support in the above-cited caselaw, or the caselaw cited by Plaintiff for the notion that an ALJ's review of a *radiology report* (as distinct from a review of the underlying images) necessarily constitutes impermissible interpretation of "raw medical data"-- although a particularly nuanced or complex report could theoretically rise to that level. Importantly, the radiology reports of the cervical and lumbar spine discussed relatively common findings. Further, even assuming one must be qualified as a medical expert to fully appreciate the nature and complexity of the pathology referenced in the radiology report (disc desiccation, facet degeneration, ventral flattening of the spinal cord, central canal stenosis), one need not have such expertise to understand the implications of the terms "mild" and "small." The ALJ reasonably inferred that such findings would not have a profoundly limiting impact on the claimant's functionality.

As to the clinical examination with Plaintiff's pain management doctor (Dr. Parmar) on March 17, 2017, the ALJ acknowledged the abnormalities Plaintiff emphasizes including: painful and limited range of motion of the lumbar spine; shoulder tenderness with crepitus and positive impingement sign. AR 14 (citing Ex. 8F/130 AR 699). However, as the ALJ noted, gait was normal, ability to heal and toe walk was intact, and full muscle strength was noted in all extremities. *Id.* These clinical examination findings were not so technical that they were not susceptible to a layperson's understanding. They have self-evident relevance to functional capacities at issue such as lifting, carrying, standing, and walking. Further, the ALJ did not discount the abnormalities identified at that examination or selectively pick only normal findings. For example, Plaintiff exhibited lumbar flexion ROM to 75 degrees,[3] extension to 15 degrees,[4] and lateral flexion to 20

---

[3] Normal is 90 degrees. Range of Joint Motion Evaluation Chart (wa.gov) (available at https://www.dshs.wa.gov/sites/default/files/forms/pdf/13-585a.pdf)

[4] Normal is 25 degrees. *Id.*

degrees[5] bilaterally. AR 700. Reasonably commensurate with those limitations the ALJ limited the RFC to occasional postural activities including stooping. As Plaintiff acknowledges, subsequent follow-up visits noted stable examination findings, and that Dr. Parmar managed Plaintiff's narcotic medications and periodically administered injections. Br. at 4-5 (citing AR 669–690).

In addition, given the limited nature of the evidence supporting disabling limitations, the ALJ had no obligation to further develop the record to rule out the possibility that a consultative opinion would result in further reductions to Plaintiff's RFC. Rather, Plaintiff simply did not meet her burden of proof on this point. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling").

Plaintiff also questions the ALJ's reasoning for discounting Plaintiff's testimony as to her pain, muscle weakness, and intolerances for extending sitting, standing, and walking, which she testified caused her to stop working. Br. at 9-10. Here, the ALJ found that the objective evidence occurring shortly after the expiration of her insured status (such as the imaging and examination discussed above dated March and April 2017), would relate more to her functioning during the relevant period as compared to her testimony several years later. AR 13.

As Plaintiff correctly observes, when the objective evidence corroborates <u>some</u> degree of pain and limitation (as is unquestionably the case here), it need not necessarily corroborate the degree of pain and limitation plaintiff alleges, and the ALJ cannot reject the alleged symptoms solely based on the lack of objective support. Br. at 10 (citing *Bunnell,* 947 F.2d at 347–48; *Garrison*,

---

[5] Normal is 25 degrees. *Id.*

759 F. 3d at 1015).   However, it was not unreasonable for the ALJ to question the reliability of Plaintiff's recollection (as reported at the March 8, 2021 administrative hearing, AR 23–50) as to the extent of her limitations during the relevant period four to seven years earlier.[6]

Further, as Defendant emphasizes, hearing counsel acknowledged that there were no records available for review during the relevant period despite his attempt to obtain the same. AR 27–29.  Hearing counsel further indicated he had discussed the same with the claimant and they had nothing to add to the record other than the April 2017 radiology records.  *Id.*  It is not clear whether the lack of records during the relevant period was due to their unavailability or due to the lack of treatment.   In either case, Plaintiff had the primary obligation to produce evidence concerning her impairment.   *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Plaintiff was however able to provide the April 10, 2017 radiology reports discussed above (dated shortly after the expiration of Plaintiff's insured status), and the ALJ admitted them into the record as they had not yet been added to the record (and thus not yet reviewed by the agency's consultants at the initial and reconsideration levels). AR 27.  No outstanding issues were identified and the hearing proceeded.  At the close of the hearing the ALJ stated "I have everything I need to make my decision, so, I'll issue it as soon as I can."  AR 49.  All indications were that the ALJ would then issue the decision based in part on the ALJ's independent review of the radiology records, which took place.

For the reasons explained above, no consultative expertise was needed to interpret those radiology reports, nor the pain management records from the same time period.  To the extent

---

[6] The relevant period demarcated as the period between the February 15, 2014 alleged onset date and her date last insured of December 31, 2016.

additional consultative review would have been impactful, a more appropriate time for Plaintiff to have requested the ALJ for such review would have been at the hearing.

### VI. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Michelle Renay Galindo.

IT IS SO ORDERED.

Dated: **March 24, 2024**                    **/s/ Gary S. Austin**
                                             UNITED STATES MAGISTRATE JUDGE